## Case No. 16,836.

### VANCE v. CAMPBELL.

## Case No. 16,837.

### VANCE v. CAMPBELL et al.

[1 Fish. Pat. Cas. 483.] [1]

Circuit Court, S. D. Ohio.    May, 1859.[2]

PATENTS—UTILITY — ESTOPPEL — INTERPRETATION OF CLAIMS.

1. Every patent is granted on the hypothesis that there is some utility. It is, however, competent for a defendant to rebut this presumption by evidence, and if he make it appear that the invention is utterly worthless it is a good defense.

2. It is very well settled that the court will not be very rigid as to the degree of utility, nor inquire into the quantum of value. If the invention be useful in any degree, and not absolutely worthless, the patent will be sustained.

[Cited in Gibbs v. Hoefner. 19 Fed. 324.]
[Cited in Johnson v. McCabe. 37 Ind. 538.]

3. If the defendant has used the patented improvement, or something substantially like it. he is estopped from denying its utility, for his use of the thing patented would imply that he thought it useful.

[Cited in Cook v. Ernest, Case No. 3,155.]

4. Whether a given element is or is not claimed as a material part of the patentee's invention, is a question for the court.

5. The words "as herein described." and "as herein set forth," refer to the specification, and may, in their proper construction, embrace elements of a combination not specifically named in the claim.

This was an action on the case, tried before Judge Leavitt and a jury [against John Campbell, William Ellison, and David I. Woodrow], to recover damages for the infringement of letters patent "for an improvement in cooking stoves," granted to plaintiff, February 6, 1849.

The specification was as follows: "To all whom these presents shall come. be it known, that I, Elisha Vance, of Wilmington, in the county of Clinton, and state of Ohio, have invented certain new and useful improvements in cooking stoves, of which the following is a full, clear and exact description; reference being had to the annexed drawings of the same, making part of this specification. in which figure 1 is a perspective view of a Premium cooking stove, having my improvements applied thereto, the bottom, one end. and part of the front being shown; figure 2 is a vertical section taken through the line X X of figure 1; and figure 3 is an elevation of the back end of the stove, the back plate being removed to expose the divingpipe, and show the arrangement of the flues. The same letters indicate the same parts in all the figures. In the accompanying drawings of a 'Premium cook-stove,' A is the firebox; B the oven; C the ash-box; which, together with the external plates of the stove, may be formed and arranged in the usual or in any convenient and improved manner. In all stoves heretofore constructed upon this plan. it has been found very difficult to make

[1] [Reported by Samuel S. Fisher. Esq., and here reprinted by permission.]
[2] [Reversed in 1 Black (66 U. S.) 427.]

the bottom and back plates of the oven sufficiently hot, and equally difficult to prevent the front and top from becoming too much heated; but while the Premium stove is admitted to be liable to this very serious objection, it is at the same time acknowledged to be, in other respects, the very best stove in use. For this difficulty, in baking in these stoves, I have devised an effectual remedy, which consists in a particular arrangement of the flues for the purpose of equalizing the draught above and below the oven, and in placing a cold air-chamber, D, between the oven B and the flue E. which prevents the front of the oven from becoming unduly heated. To insure a free circulation of air in the chamber D. I insert a pipe d into its bottom, which admits a continual current of cold air, and makes apertures 'd' in the upper part of its ends, which admit of a constant escape of rarified air. To heat the oven equally on all its sides, it must be uniformly enveloped with the heated products of combustion; to this end, the flue is divided at the front of the oven into two branches, one passing above, the other below the oven, and which reunite near the middle of the back flue where they enter the pipe i, which is made to descend to that point; but the placing of the pipe i, with its lower end in this position, although necessary to divide the heat equally between the top and bottom of the oven, is not alone sufficient, because of the tendency of the current to take the shortest and most direct path to the place of exit; and without the plate A. at the front of the cold air-chamber, with a low fire, most of the heat would pass beneath the oven; and with the fire-box full of fuel, most of the heat would pass over the oven, which, under these differing circumstances. would present opposite extremes of irregularity in the diffusion of heat. To prevent such irregularities, therefore, I place the plate A, as seen in figure 2, so that it will form a flue in front of the cold air chamber (whose mouth is at the same distance from the flue above the oven, that the lower end of the pipe i is above the flue below the oven), and these flues being at all times unobstructed, their action is uniform, and the heat is equally distributed under all circumstances on the several sides of the oven. The arrows indicate the course of the upper branch of the current of heat, and the arrow u that of the lower branch. By this arrangement of the flues, and the exit-pipe i. the heat is not only at all times uniformly distributed over the oven, but it is also directed so as to bring it at the best advantage into contact with such culinary vessels as may be placed on the stove, and containing water or other substances which it is required to boil, so that the dampers are in no case required, as the stove is at all times adjusted and in perfect order to perform any culinary operation for which it is adapted, an advantage which all can appreciate who are acquainted with the difficulty of instructing those persons who are in general more immediately intrusted with the management of cooking stoves, in the proper use and adjustment of dampers. Having thus described the construction and arrangement of my improved Premium stove, what I claim therein as new, and desire to secure by letters patent, is the combination of the diving-pipe i, with the flues F, arranged as herein described, for the purpose of evenly distributing and equalizing the heat on the four sides of the oven, without using or requiring dampers, as herein set forth. In testimony whereof, I have hereunto set my hand. in presence of two subscribing witnesses. Elisha Vance."

So much only of the charge as relates to the construction of the patent. and the question of utility, is here reported.

G. M. Lee and S. S. Fisher. for plaintiff.
T. D. Lincoln. for defendants.

LEAVITT, District Judge (charging jury): The novelty or originality of this invention is not controverted, but it is insisted by the defendants that there is such an entire absence of utility in the improvement as to affect the validity of the patent itself. The statute undoubtedly makes utility essential to the validity of a patent, and whether it exists in a particular case, is to be decided by the jury upon the evidence, subject to the decision of the court upon the law. It is very familiar law that the patent itself affords prima facie evidence of utility. The patentee is obliged to accompany his application with his oath to the usefulness of his invention, and every patent granted is based upon the hypothesis that there is some utility. Still it is. competent for the defendant to rebut this presumption by evidence, and if he make it appear that the invention is utterly worthless, it is a good defense. In regard to this matter, however, it is very well settled that the courts will not be very rigid as to the degree of utility. It will not inquire into the precise quantum of value; but, if the invention be useful in any degree, and not absolutely worthless, the patent will be sustained. In this case, there has been a great deal of conflicting testimony. The plaintiff proves; by several men that have used it, that the stove works well; while others testify that it is a good stove and in demand. On the other hand, some who have used it. pronounce it of no value; while others again, who have been examined on this point. express an opinion. derived from actual knowledge of its operation. or from theoretical observation, that, in their judgment, this improvement adds nothing to the value of the old "Premium Stove." It is left with the jury to apply this testimony in accordance with the law; it is for you to judge of the credibility of the witnesses. and the weight of their testimony, upon this point; but I may also remark that if you find that the defendants have used this improvement, or

something substantially like it, they are estopped from denying the utility of the plaintiff's invention; for, in that case, the use of the thing patented would imply that the party thought it of some utility.

\*        \*        \*        \*        \*        \*

Upon the question of infringement, if the front plate is claimed in the specification as a material part of the plaintiff's combination, and if it be material and necessary to the action of the plaintiff's stove, and the defendants have not used it, or something which is an equivalent for it, there is no infringement. Whether it is claimed as material in the specification, is a question for the court. The patent is for an improvement on a stove before known, called the "Premium Stove." It would seem to be the object of the invention to produce an equal distribution of heat, without the aid of a damper, and in any stage of the fire. After describing various changes and appliances to effect these objects, and among them the "diving-pipe," the patentee proceeds to say: "This (the diving-pipe) is not alone sufficient, because of the tendency of the current to take the shortest and most direct path to the place of exit; and without the plate 'a' at the front of the cold air-chamber, with a low fire, most of the heat would pass beneath the oven; while with a fire-box full of fuel, most of the heat would pass over the oven," etc. "To prevent such irregularities, therefore, I place the plate 'a' so that it will form a flue in front of the cold air-chamber," etc. It would seem, from these extracts, and from the whole specification, that the plaintiff has fully described the front plate, and that he regarded it as an important agent for the production of the effect at which he aimed. It is true that in the "summing-up," the front plate is not specifically designated. He there claims, as his invention, "the combination of the diving-pipe i, with the flues F, arranged as herein described, for the purpose of evenly distributing and equalizing the heat on the four sides of the oven, without using or requiring dampers, as herein set forth." But in giving a construction to a patent, it is the duty of the court to look to the whole specification, to the body of the patent. And, in the "summing-up" itself, the patentee refers to the arrangement "as herein described," and "as herein set forth," embracing most clearly, as I think, by these phrases, the front plate. I am obliged to say, therefore, that, in my opinion, he claims it as a material element of his combination.

[On a writ of error from the supreme court the judgment was reversed, and a venire de novo ordered. 1 Black (66 U. S.) 427.]